# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Claudio A.A.,[1]

                  Petitioner,                 Case No. 26-cv-742 (KMM/LIB)

    v.

                                 **REPORT AND RECOMMENDATION**

Pameal Bondi, et al.,

                  Respondents.

Pursuant to a general referral made in accordance with 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Claudio A.A.'s Petition for a writ of habeas corpus. [Docket No. 1]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[2]

For the reasons discussed herein, the undersigned recommends that Petitioner Claudio A.A.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein; that Respondents be ordered to immediately release Petitioner upon the issuance of any Order adopting the present Report and Recommendation with confirmation of Petitioner's release to be filed with the Court within forty-eight hours of said Order; and that Respondents be ordered to show cause why they failed to comply with the Court's January 28, 2026, Order.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration opinions such as the present Report and Recommendation. See, e.g., Yee S. v. Bondi, No. 25-cv-2782 (JMB/DLM), 2025 WL 2879479, at *1 n.1 (D. Minn. Oct. 9, 2025); Sarail A. v. Bondi, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *1 n.1 (D. Minn. Sept. 3, 2025). Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

[2] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because the relevant facts are not in dispute and because a hearing on the Petitioner's claim would not aid the Court in its consideration of the present Petition. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983).

I.    **Background**[3]

Petitioner is a citizen of Mexico. (See Petition [Docket No. 1] ¶ 3). Petitioner first entered the United States without inspection at some time prior to February 13, 2002. (Id.). On February 13, 2002, an immigration judge ordered Petitioner removed from the United States to Mexico. (Id.). Over the next thirteen years, Petitioner reentered the United States and was again removed from the United States to Mexico on eight different occasions. (Id.).

Petitioner most recently reentered the United States at some time on or before April 12, 2014. Arce v. United States, 899 F.3d 796, 798 (9th Cir. 2018). Petitioner was arrested by immigration officers on April 12, 2014, and proceedings were initiated to reinstate Petitioner's order of removal. See Id. Petitioner requested asylum which was ultimately referred to an immigration judge who denied that request. Id. Petitioner remained detained during these proceedings. (Petition [Docket No. 1] ¶ 4–5).

On August 19, 2015, an immigration judge granted Petitioner "the ability to post a bond[.]" (Id. ¶ 5; Exhibit E [Docket No. 12-6]). When Petitioner later posted his monetary bond, the Department of Homeland Security released Petitioner subject to an Order of Supervision. (Petition [Docket No. 1] ¶ 6).[4]  Since his release, Petitioner has complied with all conditions of his release, including his regular check-ins with immigration officials. (Id. ¶¶ 8–11).

---

[3] "Because Respondents did not contest any of the factual allegations in the Petition, these allegations are deemed admitted." Jose A. v. Noem, No. 26-cv-480 (JMB/ECW), 2026 WL 172524, at *1 n.2 (D. Minn. Jan. 22, 2026) (citing Bland v. California Dep't of Corr., 20 F.3d 1469, 1474 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000)).

[4] Neither the date Petitioner was able to post bond nor the date the Order of Supervision was issued is available in the record. When discussing the background and administrative history in an action such as the present case, the Court would typically provide citations to the operative habeas petition, the document evidence underlying the petitioner's arrest and detention, and any documents from the immigration-related proceedings. Additionally, in a case where the Petitioner was released subject to certain conditions as imposed through an order from an immigration judge, the Court would cite to that order to discuss its contents. This, however, is not possible in the present case because Respondents failed to provide any such evidence. Respondents were ordered to file an answer to Petitioner's present Petition to include a reasoned memorandum of law and "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised" in the present Petition. (Order [Docket No. 4]). Respondents failed to comply with the Court's direction. Respondent did

During his removal proceedings, Petitioner filed an Application of Withholding of Removal to Mexico and a petition for protection under the Convention Against Torture. (See Immigration Judge Order [Docket No. 11-1]).[5] On September 13, 2024, an immigration judge denied Petitioner's Application of Withholding of Removal to Mexico and his request for protection under the Convention Against Torture. (See Id.). Petitioner appealed the immigration judge's decision regarding Petitioner's request to withhold removal, and that appeal remains pending. (See Respondents' Mem. [Docket No. 11] at 2).[6]

For at least six years, Petitioner, while subject to his Order of Supervision, remained free from detention by immigration officials without any indication from immigration officials that he was at risk of being redetained. (See Petition [Docket No. 1]). On January 27, 2026, Immigration and Customs Enforment ("ICE") officers arrested Petitioner when he presented himself for a scheduled check-in appointment with immigration officials. (See Id. ¶ 11). Following his arrest, Petitioner was held at ICE's temporary-holding facility within the Bishop Henry Whipple Federal Building in Fort Snelling, Minnesota. (Id. ¶¶ 12–13).

During the evening of January 27, 2026, Petitioner, through counsel, initiated the present action by filing his Petition. As relief, Petitioner seeks his immediate release from detention. (See Id. ¶¶ 21, 105–11, Request for Relief). At the time his Petition was filed, Petitioner remained detained at ICE's Fort Snelling detention facility. (Petition [Docket No. 1] ¶¶ 12–13).

---

not file any documentation evidence or affidavit providing any information regarding Petitioner's arrest, his detention, his present location, or even an affidavit acknowledging the facts of this case. The only document Respondents filed was a document which purports to be a copy of the immigration judge's order denying Petitioner's Application for Withholding of Removal and his request for protection under the Convention Against Torture, but Respondents did not file any affidavit with said document affirming that it was a true and correct copy of said order or authenticating the document. Nevertheless, the Court finds that the present record is sufficient to resolve the issues raised in the present Petition.

[5] An application for withholding of removal asks an immigration judge to find that the petitioner cannot be removed to a specific country. See 8 C.F.R. §§ 1208.16, 1208.17.

[6] While Petitioner's withholding-only appeal is pending, Respondents may not remove Petitioner to Mexico. See 8 C.F.R.§§ 1208.16(f), 1208.17(a); Garcia Diaz v. Acuff, 507 F. Supp. 3d 991, 996 (S.D. Ill. 2020).

On January 28, 2026, the undersigned issued an Order establishing a schedule for the parties to submit briefs on the present Petition. (Order [Docket No. 4]). Respondents were permitted fourteen days to respond, and Petitioner was permitted seven days thereafter to file a reply. (Id.).

Approximately four hours after the undersigned issued the January 28, 2026, Order but still on January 28, 2026, Petitioner filed a Motion for Temporary Restraining Order which sought, among other things, an Order of this Court prohibiting Respondents from moving Petitioner outside the territorial boundaries of the District of Minnesota. (Mot. [Docket No. 6]). At the time Petitioner's Motion for Temporary Restraining Order was filed, Petitioner appeared to remain detained in Minnesota. (Mem. [Docket No. 6-1] at 1).

The evening of January 28, 2026, less than two hours after Petitioner's Motion for Temporary Restraining Order was filed, the Honorable Katherine M. Menendez, the District Court Judge presiding over this case, issued an Order enjoining Respondents from removing Petitioner from the District of Minnesota during the pendency of this case. (Order [Docket No. 7]). The Order noted that due to "the temporary nature of the detention facility at the Whipple Building, the Court expects Petitioner will be" transferred to "another facility," and the Order required Respondents, within twenty-four hours of any such transfer, to notify the Court and Petitioner's counsel of Petitioner new location. (Id.). Judge Menendez also determined that the briefing schedule should be accelerated, and she ordered Respondents to file their required response on or before February 4, 2026, with Petitioner's reply, if any, due on or before February 7, 2026. (Id.).

On January 29, 2026, Respondents filed a letter which—except for the letterhead, address block, and signature—reads in its entirety as follows: "Dear Judge Menendez: This letter is to

inform the Court that the Petitioner is currently being held at the ERO El Paso Camp East Montana, El Paso, Texas." (Letter [Docket No. 8]). No other information was provided at that time regarding when Petitioner arrived in Texas, and no further information has been provided regarding Petitioner's location since that time.

Respondents did not file their required response to the present Petition by the February 4, 2026, deadline. On February 6, 2026, Judge Menendez issued an Order noting that Respondents had failed to file their required response, and Judge Menendez directed them to file their required response by no later than February 7, 2026. (Order [Docket No. 10]).

Respondents filed their response on February 7, 2026. (Mem. [Docket No. 11]). Respondents' memorandum is, however, underlined entirely unresponsive to the present Petition. (See Id.). For example, Respondents' memorandum begins with the following assertion: Petitioner "is an alien held in civil immigration detention who brings this Petition alleging that his detention pursuant to § [sic] 8 U.S.C. § 1231(a)(6) has become unreasonably long, thereby violating his rights under the Fifth Amendment's Due Process Clause." (Respondents' Mem. [Docket No. 11] at 1) (discussing Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001)). Respondents' memorandum goes on to proffer arguments on that basis. The problem however is that Petitioner does not raise any such argument, and his Petition does not challenge the length of his detention as Respondents assert. (See Petition [Docket No. 1]). The present Petition explicitly and in no uncertain terms challenges the constitutionality of Petitioner's arrest and his detention arguing that Respondents have no statutory basis for either his arrest or detention while he remained compliant with his Order of Supervision. (See Id. ¶¶ 1–28, 46–60, 116–70).[7] Despite given three

---

[7] Other portions of Respondents' memorandum include demonstrably inaccurate and contradictory factual assertions which lead to inapplicable arguments and assertions. (See, e.g., Id. at 8–12). For example, Respondents memorandum acknowledges that Petitioner's present detention has lasted less than a month, but one portion of their argument begins as follows: Petitioner's "current post-final-order detention commenced just over 10 months ago on

chances to file their required response, Respondents have not provided any substantive response to the arguments in the present Petition.

## II.    Discussion

"Habeas is at its core a remedy for unlawful executive detention." Munaf v. Geren, 553 U.S. 674, 693 (2008). To ensure that remedy remains available, district courts have been vested with the authority to grant writs of habeas corpus to any individual who demonstrates that they are being subjected to custodial confinement in violation of the Constitution, federal law, or a treaty of the United States. See, e.g., Rasul v. Bush, 542 U.S. 466, 473 (2004); 28 U.S.C. §§ 2241(a), 2241(c)(3). The district court's habeas jurisdiction includes the authority to adjudicate habeas challenges to a noncitizen individual's immigration-related detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001). "Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful." Abel Jimenez Jimenez v. Samuel J. Olson, No. 25-cv-189 (CJW/KEM), 2025 WL 3633609, at *2 (N.D. Iowa Dec. 15, 2025) (citing Aditya W. H. v. Trump, 782 F. Supp. 3d 691, 702 (D. Minn. 2025); Walker v. Johnston, 312 U.S. 275, 286 (1941)).

In the United States, immigration law permits "authorized immigration officials to detain some classes of [noncitizens] during the course of certain immigration proceedings" Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). For example, 8 U.S.C. § 1231 provides that after an individual is ordered removed from the United States, immigration officials "shall detain the" individual "[d]uring the removal period[.]" 8 U.S.C. § 1231(a)(2)(A). The removal period is a

---

January 28, 2026, [sic] upon his arrest. Since that time, [Petitioner] has caused his detention to be prolonged by continuing to exercise his right to pursue withholding-only challenge to his removal, which remains pending before the BIA." (Id. at 8, 11). Petitioner has of course not been detained for 10 months; he has been detained since January 27, 2026. Moreover, Petitioner has not prolonged his detention by pursing his withholding-only challenge to his removal; Petitioner's appeal of the denial of his withholding-only challenge had already been pending for more than a year at the time of his January 27, 2026, arrest.

"period of 90 days" and under circumstances like the present case, the removal period "begins on . . . [t]he date the order of removal  becomes administratively final." 8 U.S.C. § 1231(a)(1).

When an individual becomes subject to a final order of removal and the removal period expires without the individual being removed, specific regulations and statutes control the government's ability to detain, release, and revoke the release of the individual. See, e.g., 8 U.S.C. § 1231; 8 C.F.R. §§ 241.4, 241.13. Once such individual is released from custody pursuant to an Order of Supervision, ICE's ability to redetain that individual is constrained by ICE's own regulations, 8 C.F.R. § 241.4 and 241.13. Relevant here is § 241.13 which applies when ICE previously determined that there is no significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. §§ 241.13(a), (b)(1), (g).

When an individual is released pursuant to an Order of Supervision under § 241.13, that release can be revoked on two grounds: violation of supervised release or changed circumstances. 8 C.F.R. § 241.13(i). Under the latter, ICE "may revoke an [individual's] release . . . and return the [individual] to custody if, on account of changed circumstances," ICE "determines that there is a significant likelihood that the [individual] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). In both cases—violation of supervised release or changed circumstances—the regulations require ICE to notify the individual "of the reasons for revocation of his or her release" and to

> conduct an initial informal interview promptly after his or her return to [ICE's] custody to afford the [individual] an opportunity to respond to the reasons for revocation stated in the notification. The [individual] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [sic] be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

7

8 C.F.R. § 241.13(i)(3). It is ICE's burden to demonstrate that "changed circumstances" justify the revocation of release. See, e.g., Roble v. Bondi, 803 F. Supp. 3d 766, 772–73 (D. Minn. 2025); Escalante v. Noem, No. 25-cv-182 (MJT), 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 150–51 (D. Mass. 2025).

"The procedures set forth in 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." Bulle v. Wesling, No. 26-cv-19 (JJM/AEM), 2026 WL 183840, at *2 (D.R.I. Jan. 23, 2026) (citing Jimenez v. Cronen, 317 F. Supp. 3d 626, 655 (D. Mass. 2018)). Noncitizens released pursuant to 8 C.F.R. § 241.13 under an Order of Supervision maintain a protected liberty interest in their continued release. See Bulle, 2026 WL 183840, at *2; Villanueva v. Tate, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025) (discussing Zadvydas v. Davis, 533 U.S. 678 (2001); Young v. Harper, 520 U.S. 143 (1997); Morrissey v. Brewer, 408 U.S. 471 (1972)). Accordingly, any attempt to redetain an individual who has been released pursuant to an Order of Supervision under § 241.13 necessarily implicates the individual's constitutionally protected liberty interests. See Villanueva, 801 F. Supp. 3d at 704. Consequently, "ICE violates a noncitizen's due process rights when the agency re-detains them and fails to comply with these revocation procedures." Bulle, 2026 WL 183840, at *2.

In the present case, the first requirement of § 241.13—that the removal period has expired—is clearly met. As Respondents acknowledge, Petitioner is subject to a removal order dated September 13, 2024, (Resp. Mem. [Docket No. 11] at 1, 5; Immigration Judge Order [Docket No. 11-1]). That removal order became final thirty days thereafter on October 13, 2024, when the time in which Petitioner was permitted to appeal the order expired without Petitioner appealing his removal order. See 8 C.F.R. § 1003.38. Petitioner's removal period thus began on

that date, and the removal period expired ninety days later on January 11, 2025. That date has long since passed.

Because the removal period has expired, Petitioner's redetention is subject to the requirements of either § 241.4 or § 241.13. If ICE previously determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future, then § 241.13 applies. But if ICE has not previously made such a determination, then § 241.4 applies.

The record in the present case demonstrates that ICE previously determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future, and therefore, § 241.13 governs Petitioner's redetention. Neither party provides the Court with a copy of the relevant Order of Supervision. Respondents do not specify or allege the basis on which the Order of Supervision was issued. However, Petitioner specifically alleges, and Respondents <u>do not rebut</u>, that ICE's decision to release Petitioner pursuant to an Order of Supervision "necessarily" required ICE to conclude that "immediate removal [was] not practicable or not in the interest of the public." (Petition [Docket No. 1] ¶ 7) (citing 8 C.F.R. § 241.4(e)). Moreover, the relevant statutory provisions provide that "[b]efore making any recommendation or decision to release a detainee," immigration officials "must conclude," among other things that "[t]ravel documents for the [individual] are not available or, in the opinion of [ICE], immediate removal, while proper, is otherwise not practicable or not in the public interest." 8 C.F.R. § 241.4(e); <u>see</u> 8 C.F.R. § 241.13(h)(1). Under these circumstances, the Court concludes "that ICE must have [necessarily] made a determination that 'there was no significant likelihood of removal in the reasonably foreseeable future'" prior to issuing the Plaintiff's Order of Supervision. <u>See</u> <u>Pham v. Bondi</u>, No. 25-cv-1157, 2025 WL 3477023, at *3 (W.D. Okla. Oct. 30, 2025) (reaching same conclusion on substantially similar facts), <u>report and</u>

<u>recommendation adopted</u>, 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025); <u>Hamidi v. Bondi</u>, No. 25-cv-1205, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025), <u>report and recommendation adopted</u>, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025).

Because ICE previously determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future and because the removal period has expired, ICE must now satisfy the requirements of § 241.13(i) before revoking Petitioner's release. The question before the Court then is whether ICE complied with § 241.13(i).

Here, the record demonstrates that Respondents <u>unequivocally failed</u> to comply with any of § 241.13(i)'s requirements. As an initial matter, there is no indication that any authorized official actually revoked Petitioner's release. Although Petitioner was arrested and has certainly been detained, Respondents do not offer any evidence, or even allege, that Petitioner's arrest was made pursuant to a revocation of his release under the Order of Supervision.[8] In the absence of any evidence that an authorized immigration official "lawfully revoked" Petitioner's release under the Order of Supervision, ICE's arrest and redetention of Petitioner without any other asserted basis for arresting and detaining Petitioner represents a patent violation of Petitioner's due process rights entitling him to habeas relief. <u>See, e.g.</u>, <u>Villanueva</u>, 801 F. Supp. 3d at 699– 700.

Furthermore, assuming solely for the sake of argument that Petitioner's arrest was the result of an authorized official revoking Petitioner's release under § 241.13(i), Respondents have <u>wholly failed</u> to demonstrate the existence of any proper grounds for revocation. As noted above, when an individual is released pursuant to §241.13, like Petitioner, ICE can revoke that release on only two grounds: violation of supervised release or changed circumstances. Neither is

---

[8] Petitioner specifically asserts that he was arrested and redetained without his Order of Supervision having been properly revoked, (Petition [Docket No. 1] ¶ 28), and Respondents do not challenge that assertion or offer any contrary argument.

present here. Respondents do not challenge Petitioner's assertion that he was in compliance with all conditions of release prior to his January 27, 2026, arrest. Respondents also fail to identify any "changed circumstance" to support the conclusion that there is now a significant likelihood of Petitioner's removal in the reasonably foreseeable future.[9]

Respondents' failure to demonstrate a proper basis to revoke Petitioner's release under § 241.13(i) is a violation of Petitioner's due process rights, and Respondents' failure here represents a sufficient, independent basis to grant habeas relief to Petitioner. See, e.g., Zhang Haixiang v. Dep't of Homeland Sec., No. 25-cv-1890, 2025 WL 3683126, at *3 (C.D. Cal. Dec. 2, 2025), report and recommendation, 2025 WL 3679184 (C.D. Cal. Dec. 18, 2025); Bulle v. Wesling, No. 26-cv-19 (JJM/AEM), 2026 WL 183840, at *8 (D.R.I. Jan. 23, 2026); Faysal N. v. Noem, No. 25-cv-4641 (JMB/DLM), 2026 WL 36066, at *5 (D. Minn. Jan. 6, 2026); Sarail A. v. Bondi, 803 F. Supp. 3d 775, 784–85 (D. Minn. 2025).

Respondents' lack of compliance with their own regulations does not end there. Even if Respondents possessed a good faith basis to believe grounds for revocation existed under §

---

[9] In the portion of Respondents' memorandum discussing their inapplicable Zadvydas-related argument, Respondents' counsel conclusorily asserts that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future because Petitioner's withholding-only appeal pending before the Board of Immigration Appeals ("BIA") is "likely to reach a conclusion in the coming months, after which [Petitioner's] removal to Mexico is expected to occur in short order, based on" his prior removals. (Respondents' Mem. [Docket No. 11] at 9). Such vague, conclusory statements are insufficient to satisfy Respondents' burden of demonstrating a change in circumstances. See, e.g., Faysal N. v. Noem, No. 25-cv-4641 (JMB/DLM), 2026 WL 36066, at *4–5 (D. Minn. Jan. 6, 2026); Sarail A. v. Bondi, 803 F. Supp. 3d 775, 784–85 (D. Minn. 2025). In addition to being insufficient to satisfy their obligation under § 241.13, Respondents statement regarding the proceedings before the BIA being "likely to reach a conclusion in the coming months" lacks any factual support in the record. Petitioner's appeal of the immigration judge's denial of Petitioner's Application of Withholding of Removal has been ongoing since September 13, 2024, and Respondents fail to proffer any basis for their assertion that those proceedings are soon to be resolved. Indeed, information from the Executive Office of Immigration Review provides that the BIA takes an average of 809 days to process a case appeal when the case involves a "non-detained" individual, as Petitioner has been for the majority of his appeal process. See Exhibit H [Docket No. 12-9]; see also Jose J.O.E. v. Bondi, 797 F. Supp. 3d 957, 967 (D. Minn. 2025) (favorably citing information from the Executive Office of Immigration Review regarding the BIA's average processing times). Although the 809-day estimation is based on date from January 1, 2024, through May 31, 2025, there is no indication that these estimations are likely to undergo any material change. Moreover, Respondents' assertion regarding the timing of the resolution of those proceedings fails to take into account that if either party is dissatisfied with the BIA's decision, that decision can be further appealed to the appropriate United States Circuit Court of Appeals and the time that continued appeal would require would preclude removal of the Petitioner to Mexico prior to its conclusion.

241.13(i), Respondents still failed to comply with § 241.13(i)'s requirement that Petitioner be provided with prior notice of revocation and the basis for that revocation. There is simply no indication in the record that Respondents provided Petitioner, at the time of his arrest, with notice of the revocation or the basis for that revocation as required by § 241.13(i)(3). Petitioner specifically asserts that neither he nor his counsel has even as yet been provided with such notice, (Petition [Docket No. 1] ¶¶ 62, 63), and here again, Respondents do not rebut that assertion. Indeed, there is no indication that notice was provided to Petitioner or his counsel at any time. Respondents do not even allege that they had provided Petitioner or his counsel with notice that Petitioner's release was being revoked by the time Respondents filed their memorandum—eleven days after Petitioner was redetained. The complete lack of the notice as required by § 241.13(i)(3) represents a violation of Petitioner's due process rights and another sufficient, independent basis upon which to grant habeas relief to Petitioner. See Roble v. Bondi, 803 F. Supp. 3d 766, 772 (D. Minn. 2025) (discussing § 241.13(i)(3) and concluding that insufficient notice demonstrates a due process violation which entitled the petitioner to habeas relief); see also Villanueva, 801 F. Supp. 3d at 699–700; Bulle, 2026 WL 183840, at *6, 8–9; Faysal N., 2026 WL 36066, at *5; Sarail A., 803 F. Supp. 3d at 784.

Still yet, that does not end Respondents' failures to comply with ICE's own regulations. Respondents have also failed to comply with the other requirements of § 241.13(i)(3) which provide that upon revocation of an individual's release under an Order of Supervision, ICE "will conduct an initial informal interview promptly after" the individual's return to ICE custody "to afford [the individual] an opportunity to respond to the reasons for revocation stated in the notification" of revocation. See 8 C.F.R. § 241.13(i)(3). At the informal interview, the individual is permitted to submit evidence to show that there is no significant likelihood that the individual

will be removed in the reasonably foreseeable future. Id. Following that interview, ICE officials are required to determine whether the facts then support revocation of release. Id. In the present case, none of these requirements have been satisfied.

There is no indication on the record that an informal interview was conducted with Petitioner to provide him with an opportunity to respond to the hypothetical basis for the revocation of his release. Likewise, there is no indication that Petitioner was permitted an opportunity to submit evidence to show there is no basis for revocation under § 241.13(i), and there is certainly no indication, or even assertion, that any ICE official has undertaken any process whatsoever to determine whether Petitioner's circumstance warrant revocation of release. Respondents' complete failure to comply with their own requirements represents a violation of Petitioner's due process rights, and Respondents' failure here too represents a sufficient, independent basis to grant Petitioner habeas relief. See, e.g., Bulle, 2026 WL 183840, at *6–7; Zhang Haixiang, 2025 WL 3683126, at *3; Faysal N., 2026 WL 36066, at *5.[10]

In summation, Petitioner has shown that ICE's redetention of him on January 27, 2026, violated Petitioner's due process rights because ICE wholly failed to comply with its own regulations under § 241.13(i). Agencies such as ICE are required to follow their own federal regulations; the constitutional protections of due process require agencies to do so when detaining or redetaining an individual. See, e.g., Sarail A., 803 F. Supp. 3d at 779; Faysal N.,

---

[10] For all the reasons discussed herein, § 241.13(i) controls the revocation of Petitioner's release, and Respondents have wholly failed to comply with the requirements of § 241.13(i) which therefore entitles Petitioner to habeas relief. The Court notes, however, that even assuming solely for the sake of argument that the revocation of Petitioner's release was governed by § 241.4, Petitioner would still be entitled to habeas relief because Respondents have also wholly failed to comply with the due process requirements of § 241.4. For example, § 241.4(l)(2) requires the revoking official to consider certain factors before revoking an individual's release, and there is no indication, or even allegation, that an immigration official has made such findings. Similarly, there is no indication that Respondents have complied with § 241.4(l)'s requirement that, upon revocation of release, ICE must initiate a review process with notification to the individual of the process, schedule an interview with the individual, and make determination as to whether revocation is warranted. In short, Respondents have arrested and redetained Petitioner with a complete lack of due process, and thus, Petitioner is entitled to habeas relief whether his circumstances are analyzed under § 241.4 or § 241.13(i).

2026 WL 36066, at *3; <u>Zhang Haixiang</u>, 2025 WL 3683126, at *3; <u>Bulle</u>, 2026 WL 183840, at *9; <u>Rondan Jarrett v. Raycraft</u>, No. 26-cv-244, 2026 WL 319044, at *9 (W.D. Mich. Feb. 6, 2026). When ICE fails to meet the requirements of § 241.13(i) in revoking an individual's release pursuant to an Order of Supervision, the appropriate remedy is the individual's immediate release subject to no conditions beyond those previously imposed in the Order of Supervision. <u>See, e.g.</u>, <u>Sarail A.</u>, 803 F. Supp. 3d at 785; <u>Faysal N.</u>, 2026 WL 36066, at *3–6; <u>Zhang Haixiang</u>, 2025 WL 3683126, at *3–4; <u>Bulle</u>, 2026 WL 183840, at *8–9; <u>Rondan Jarrett</u>, 2026 WL 319044, at *9–11.

On that basis, the undersigned recommends that Claudio A.A.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein. More specifically, the undersigned recommends that Respondents be ordered to immediately release Petitioner following the issuance of any Order adopting the present Report and Recommendation.[11] The undersigned further recommends that Respondents be required to confirm Petitioner's release within forty-eight hours of any Order adopting this Report and Recommendation.

## III. Respondents' Noncompliance with the Judge Menendez's Prior Order

As noted above, Judge Menendez issued an Order on January 28, 2026, enjoining Respondents from removing Petitioner from the District of Minnesota until a final decision is made on the present Petition. (Order [Docket No. 7]). Judge Menendez also ordered Respondents to inform the Court and Petitioner's counsel of Petitioner's location within twenty-four hours after moving Petitioner to any new location from the temporary-holding facility where he was then detained.

---

[11] It is further recommended that upon Petitioner's release Respondents be ordered to return all of Petitioner's personal property and documentation he had with him at the time he was detained on January 27, 2026.

Respondents have here too <u>wholly failed</u> to comply with Judge Menendez's January 28, 2026, Order. Respondents were specifically enjoined from removing Petitioner from the District of Minnesota, but despite that explicit order, the day after Judge Menendez issued her Order, Respondents filed a letter informing the Court that Petitioner had been transferred to Texas where he continued to be detained at the time Respondents filed their letter. It has now been two weeks since Judge Menendez issued her Order, and Respondents have not provided any indication that Petitioner has been or is being returned to Minnesota. Respondents' failure is exacerbated by the fact that Petitioner does not appear on ICE's publicly facing Online Detainee Locator System.

Because the record establishes that Respondents are in violation of the Court's January 28, 2026, Order, the undersigned recommends that Respondents be ordered to show cause why they should not be held in civil contempt for failing to comply with Judge Menendez's January 28, 2026, Order.

**IV.    Objection Period**

The undersigned notes that one last issue merits discussion—the time in which the parties are permitted to object to the present Report and Recommendation, if they so choose. This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule 72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation, "within 14 days after being served with a copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1). A party may then respond to those objections within fourteen days after being served a copy of the objections. LR 72.2(b)(2). Thus, under normal

15

circumstances a party would be permitted fourteen (14) days in which to file its objections to the present Report and Recommendation, if it chooses to object, and then the opposing party would be permitted an additional fourteen (14) days in which to file its response to said object, if it so chooses.

In the present case, however, Petitioner's unlawful detention would be unnecessarily further prolonged by this objection period to the point that the time limit in which the undersigned recommends Petitioner be released would be doubled fourteen times over by the end of the standard objection period. Put differently, if the parties were permitted the full objection period, comprised of twenty-eight days, then the relief recommended by the undersigned would be materially diminished.

Therefore, the Court, in its inherent power to manage pending litigation, reduces the time in which any party is permitted to object to the present Report and Recommendation to two (2) days, and correspondingly, the Court reduces to one (1) day the time in which any party is permitted to respond to any objection. An objection period of any longer duration would materially and unnecessarily undermine the recommended relief.

## V.    Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Claudio A.A.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein;

2. Respondents be required to return Petitioner to Minnesota for immediate release;

3.  Respondents be required to immediately release Petitioner in Minnesota without subjecting him to conditions greater than those specifically imposed in the Order of Supervision;

4.  Respondents be required to release Petitioner with all his personal effects seized during his arrest, as well as, all identification documents and immigration documentation;

5.  Respondents be required to confirm Petitioner's release in Minnesota from custody within forty-eight (48) hours from the date of any Order adopting the present Report and Recommendation;

6.  Respondents be precluded from redetaining Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances; and

7.  Respondents be ordered to show cause why they should not be held in civil contempt for failing to comply with Judge Menendez's January 28, 2026, Order.


Dated: February 12, 2026                          s/Leo I. Brisbois
                                                  Hon. Leo I. Brisbois
                                                  U.S. MAGISTRATE JUDGE